# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KARL RABENHORST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No: 21 CV 3620 |
| vs. ) | |
| ) | Jury Demand |
| ) | |
| ALEJANDRO N. MAYORKAS, SECRETARY, ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |

# PLAINTIFF'S EXHIBIT A

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528



|  |  |
|---|---|
| Karl Rabenhorst, ) <br> ) <br> *Complainant* ) <br> ) <br> v. ) <br> ) <br> Alejandro N. Mayorkas, Secretary, ) <br> U.S. Department of Homeland Security, ) <br> ) <br> *Agency* ) <br> ) | Agency Case No. HS-FEMA-02247-2018 |

## <u>FINAL AGENCY DECISION</u>

Pursuant to 29 C.F.R § 1614.110(b), the U.S. Department of Homeland Security (Department), Office for Civil Rights and Civil Liberties (CRCL) hereby takes final action on the above-captioned complaint by issuing a Final Agency Decision (FAD).[1] Based upon a review of the full Investigative File (IF), CRCL finds that Complainant failed to prove by a preponderance of the evidence that the Federal Emergency Management Agency (FEMA) discriminated against Complainant. Pursuant to 29 C.F.R. § 1614.110(b), a notice is attached to this Decision informing Complainant of the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in Federal District Court. Also, a copy of EEOC Form 573 is attached for Complainant's submission to the EEOC's Office of Federal Operations, should Complainant decide to file an appeal.

### PROCEDURAL HISTORY

1. On July 9, 2018, Complainant initiated contact with an Equal Employment Opportunity (EEO) Counselor. (Investigative File (IF) at 39).

---

[1] Pursuant to the Homeland Security Act of 2002, *as amended*, 6 U.S.C. § 345, the Officer for Civil Rights and Civil Liberties (CRCL) shall ensure that the protection of civil rights and civil liberties is appropriately incorporated into Departmental programs and activities. On October 26, 2012, the Secretary for the Department issued Delegation Number 19003, which delegated to CRCL the authority to render final decisions on behalf of the Secretary in EEO complaints, pursuant to 29 C.F.R. § 1614.110, or administratively, when that regulation is not applicable.

2. On August 8, 2018, FEMA notified Complainant of the conclusion of EEO counseling and of Complainant's right to file a formal complaint. (IF at 53).

3. On August 29, 2018, Complainant filed the formal complaint at issue. (IF at 23).

4. On November 7, 2019, FEMA forwarded Complainant a copy of the Investigative File, providing Complainant with notice of Complainant's right to request a hearing before an EEOC Administrative Judge or, alternatively, to receive a FAD.

5. On December 9, 2019, Complainant filed a request for a FAD.

6. On February 26, 2020, CRCL received FEMA's request for a FAD.

7. On August 7, 2020, CRCL remanded the instant complaint for supplemental investigation (SUPP-IF). (SUPP-IF at 45).

8. On December 3, 2020, CRCL received the supplemental record and notice of Complainant's FAD election.

## CLAIMS AT ISSUE

Whether FEMA discriminated against Complainant and subjected him to harassment based on sex (male), age (YOB: 1957), and reprisal (prior EEO activity) when:

1. On June 25, 2018, management issued Complainant an unsigned Notice of Proposed 14-day Suspension, which referenced Complainant's previous EEO complaint; and

   a. Management did not respond to his formal responses provided on June 30, 2018, and July 9, 2018, regarding the proposed suspension.

   b. Management failed to attend his July 9, 2018 meeting regarding the disciplinary proposal.

2. On August 7, 2018, management cancelled Complainant's participation in the LaSalle County Station Radiological Emergency Preparedness (REP) exercise.

3. On August 20, 2018 management informed Complainant that he would no longer evaluate the Fermi II Nuclear Power Plan REP Exercise and ignored Complainant's request for a meeting.

4. From on or about November 5, 2014, and ongoing, management conspired to defraud the U.S. Nuclear Regulatory Commission.

5. On October 1, 2018, management issued Complainant a decision to suspend him without pay for 13 days.

2

## FINDINGS OF FACT

1. During the relevant time period, FEMA employed Complainant as a Technical Hazard Specialist (Integration Officer), GS-12, in Region V, Technical Hazards Branch (THB) of the National Preparedness Division.[2] (IF at 70).

2. The THB Chief, S1 (male, American, YOB: 1964, no prior EEO activity), served as Complainant's first-line supervisor. (IF at 90).

3. On October 11, 2017, FEMA deployed Complainant to Disaster Relief effort (DR) 4339-PR in Puerto Rico in the position of a Planning Specialist Trainee. (IF at 101). The DR 4339-PR Chief of Staff, S2 (female, YOB: 1955, no prior EEO activity) served as the management official responsible for all personnel assigned to the DR. (IF at 99).

4. On October 28, 2017, S2 released Complainant from his DR 4339-PR deployment, "with cause, as a result of conduct and behavior issues with colleagues and supervisors." (IF at 101-102).

5. On June 25, 2018, S1 issued Complainant Notice of Proposed Suspension for a period of fourteen (14) days, based on allegations that Complainant exhibited "Conduct unbecoming a Federal employee" on August 28, 201; "Disruptive behavior" on October 21 and 25, 2017, during his deployment to DR 4339-PR in Puerto Rico; and "Failure to follow instructions" on August 28, 2017. (IF at 127-37).

6. On October 1, 2018, S1 issued Complainant notice of his Suspension Decision and a copy of the Douglas Factors Worksheet S1 utilized to determine and decide the appropriate corrective actions for Complainant's alleged conduct. The letter stated that Complainant's 14-day proposed suspension was mitigated to a 13-day suspension, effective October 2, 2018, through October 14, 2018. (IF at 440).

7. Pursuant to Section 1-7, Paragraph G (2) of FEMA's Manual 255-3-1, Employee Discipline Manual, (Dec. 29, 2015) employees are responsible for: "exercising courtesy and professionalism in dealing with fellow workers, supervisors, and the public." (SUPP-IF at 200).

## STANDARD OF REVIEW

*Title VII and Age*

Section 717 of Title VII of the Civil Rights Act of 1964 ("Title VII") *as amended*, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination based on race, color, religion, sex, and national origin.

---

[2] On or around June 27, 2017, Complainant was reassigned from a position as an Ohio Site Specialist to a position as an Integration Officer. (IF at 72-73).

3

The Age Discrimination in Employment Act of 1967 ("ADEA"), *as amended*, 29 U.S.C. § 621 *et seq.*, protects Federal employees who are 40 years of age or older from employment discrimination based on age. Title VII and the ADEA also prohibit reprisal or retaliation against participation in the EEO process or for opposing any unlawful employment practices covered by these statutes.

In the absence of direct evidence of discrimination, the tripartite analysis first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to claims of discrimination alleging disparate treatment. *O'Connor v. Consol. Coin Caterers*, 517 U.S. 308 (1996); *McDonnell Douglas*, 411 U.S. at 802. Under this analytical framework, the complainant must first establish a *prima facie* case of discrimination by presenting facts reasonably giving rise to an inference of discrimination when unexplained: *i.e.*, a prohibited reason was a factor in the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the record establishes a *prima facie* case, a presumption arises that the employer unlawfully discriminated against the complainant, and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" to rebut the *prima facie* case. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). Should the employer meet this burden of production, the complainant "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [the Agency] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 254. Ultimately, the burden of showing the employer intentionally discriminated against the complainant on the basis of his or her protected status remains at all times with the complainant. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

In a case where the employer has articulated legitimate, nondiscriminatory reasons for its actions, the factfinder need not determine whether the complainant has established a *prima facie* case of discrimination. Instead, the factfinder should review the entire record to determine whether the record supports a finding of discrimination. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983); *Austin v. Dep't of the Navy*, EEOC Appeal No. 01900068 (Dec. 8, 1989). Therefore, this decision does not include a *prima facie* case analysis on the disparate treatment claims at issue.

### *Hostile Work Environment*

Harassment claims involve one or both of the following categories: (1) harassment by a supervisor that results in a tangible employment action, and (2) harassment which creates a hostile work environment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *see also* Equal Employment Opportunity Commission *Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors*. In a case where a complainant proves a supervisor subjects the complainant to unlawful discriminatory harassment which results in a tangible employment action, the employer will be found liable since no affirmative defense is available to the employer. *Id.*

In order to prevail on a claim of a hostile work environment, a complainant must prove the workplace was permeated with discriminatory behavior sufficiently severe or pervasive to create a discriminatorily hostile or abusive work environment — one that a reasonable person would

4

find hostile or abusive in addition to the victim's own subjective perception. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17 (1993); *Meritor Savs. Bank v. Vinson*, 477 U.S. 57 (1986). To establish a claim of hostile environment, a complainant must prove the following elements: (1) the complainant is a member of a protected group; (2) the complainant was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the unwelcome conduct was based upon the complainant's protected class; (4) the unwelcome conduct affected a term or condition of the complainant's employment, or had the effect of unreasonably interfering with the work environment, or creating an intimidating, hostile or offensive work environment; and (5) there is a basis for imputing liability to the employer. *See McCleod v. Soc. Sec. Admin.*, EEOC Appeal No. 01963810 (Aug. 5, 1999) (*citing Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1982). In cases involving supervisory harassment i.e. where the individual accused of harassment has the authority to take tangible employment actions (such as hire, fire, reassign or discipline), *see Vance v. Ball State Univ.*, 570 U.S. 421 (June 24, 2013), where no tangible employment action is taken, the employer may prove an affirmative defense comprised of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *See Ellerth*, 524 U.S. 742; *see Faragher*, 524 U.S. 775; *see also* Equal Employment Opportunity Commission *Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors*. In cases involving harassment by a coworker or non-employee where no tangible action is taken, the employer will be found liable if the complainant proves the employer knew or should have known of the conduct, unless the employer can prove that it took immediate and appropriate corrective action. 29 C.F.R. § 1604.11(d); *see* Equal Employment Opportunity Commission *Policy Guidance on Current Issues of Sexual Harassment*; *see also Owens v. Dep't of Transp.*, EEOC Request No. 05940824 (Sept. 5, 1996).

## ANALYSIS

### A. Procedural Dismissal

This Office dismisses Claim 4, pursuant to 29 C.F.R. §1614.107(a)(1), for failure to state a claim. Here, Complainant alleged he witnessed unlawful activities and was subjected to retaliation when he spoke out as a whistleblower; however, such an allegation does not fall within the jurisdiction of the EEOC. Accordingly, because the incident alleged in Claim 4 fails to cite a basis of discrimination within the purview of the EEOC's statues and regulations, this claim is dismissed.

### B. Disparate Treatment

<u>Claims 2 and 3: Complainant's Participation in August 7 and 20, 2018 Exercises Cancelled</u>

Management articulated legitimate, nondiscriminatory reasons for their actions regarding the events on August 7 and 20, 2018. S1 explained that at the beginning of the year, employees are assigned to serve as evaluators for the 15 scheduled FEMA evaluation exercises in his region. He stated that Complainant elected to swap his participation in another scheduled exercise to

5

instead participate in the Fermi REP exercise. (IF at 92, 510). In response to Complainant's claim regarding the August 20, 2018, Fermi II Nuclear Power Plan REP exercise (Claim 3), S1 explained that Complainant's participation was cancelled based on a determination of the lead evaluation exercise director to reduce program costs by reducing the overall number of evaluators. (IF at 93). With respect to Complainant's accepted allegation (Claim 2) that he was denied participation in the August 7, 2018, LaSalle County Station Radiological Emergency Preparedness (REP) exercise, S1 contended that Complainant attended and participated in that exercise as planned. (IF at 93).

Complainant failed to prove by a preponderance of the evidence that management's legitimate, nondiscriminatory reasons were pretext for discrimination. Complainant asserted that on August 20, 2018, S1 cancelled his scheduled participation at the Fermi evaluation exercise and instead sent a contractor in his place. Complainant asserted that S1 advised that on August 27, 2018, they would meet, "ostensibly" to discuss his pending disciplinary proposal (Claims 1 and 5). However, Complainant stated the expected discussion regarding his proposed suspension did not occur. (IF at 81-82). With respect to the August 7, 2018, REP exercise, Complainant conceded that he participated in the evaluation as scheduled, but expressed discontent that S1 was not present at the exercise as planned. (IF at 81). In response, S1 noted that his attendance at the event in no way impacted Complainant. (IF at 95). Complainant failed to provide any evidence to support his assertions that management's actions regarding his participation with the evaluation exercises were motivated by a discriminatory animus.

Claims 1 & 5: 13-Day Suspension

Management articulated legitimate, nondiscriminatory reasons for issuing Complainant a 13-day suspension. S1 denied that Complainant's age, sex, national origin, were factors in his decision. (IF at 92, 96). S1 stated that he consulted with an Employee Labor Relations specialist (ELR) (male, YOB: 1967, no prior EEO activity) before issuing the proposed suspension. (IF at 91, 116). S1 explained that during the fall of 2017[3], two related conduct incidents occurred that warranted disciplinary action following Complainant's disagreement with S1's determination on the way an exercise should proceed. S1 stated he learned from a contractor that Complainant had expressed, "[S1] had his head up his ass," regarding S1's direction, which, the contractor reported, caused confusion and interference during the exercise. (IF at 90-91, 112). S1 stated that he discussed the comment with Complainant and directed him "not to talk to contractors about the exercise," and "to bring future issues to the chain of command." However, the next day, Complainant was "directly insubordinate" by reengaging with the contractor and again expressing complaints about S1's decision. S1 indicated that a final issue of inappropriate conduct occurred while Complainant was under S2's supervision during his deployment to DR 4339-PR during October 2017, which resulted in S2 demobilizing Complainant from the deployment ahead of schedule. (IF at 90-91).

The ELR stated that when S1 advised him of Complainant's conduct issues, he reviewed witness statements and the evidence, reviewed the table of penalties, and did a comparison of similar conduct instances to ensure consistency prior to sending a proposal recommendation. (IF at 116).

---

[3] The proposal and Suspension Decision indicate August 28 and 29, 2018 were the dates Complainant's negative comment and insubordinate conduct, respectively, with the contractor. (IF at 127-30).

Thereafter, S1 issued the proposal, and after reviewing Complainant's written response to the proposed suspension, supporting documentation, statements from employees and supervisors in DR-4437 PR who witnessed Complainant's conduct, and conducting a Douglas Factor analysis, he mitigated the proposed 14-day suspension to a 13-day suspension. He issued Complainant the Suspension Decision on October 1, 2018. (IF at 92).

The record contained copies of S2's November 6, 2017, memorandum documenting the "disruptions," uses of profanity, "unprofessional and embarrassing references to female colleagues and supervisors," and failure to "follow the chain of command" that resulted in Complainant's demobilization from DR 4339-PR, and related witness statements. (IF at 487-95, 497-500, 502-04, 506-08). Additionally, the record contained a copy of the Douglas Factor analysis, FEMA's Table of Penalties, and a matrix of FEMA employees subjected to disciplinary actions within a two-year period preceding Complainant's suspension who were charged and disciplined for the same category of infractions alleged and upheld against Complainant. (IF at 444-48, 450, 452-75).

Complainant failed to prove by a preponderance of the evidence that management's legitimate, nondiscriminatory reasons for suspending him were pretext for discrimination. Complainant asserted his disagreement with the framing of the events S1 charged him with in the suspension proposal and upheld in the suspension decision, which he described as "inaccurate." (IF at 74-79).

Complainant alleged that management failed to respond to his formal response to the proposal. (Claim 1a). However, Complainant testified that S1 sent Complainant confirmation of his receipt of Complainant's written response on July 10, 2018. (IF at 80). Complainant further asserted that S2 "has a reputation for being a man-hater," and asserted that the limited presence of males in his chain of command evidenced sex discrimination at DR 4339-PR. However, other than Complainant's speculative assertions, Complainant failed to present any evidence of management's alleged animus or that his sex, age, or national origin was considered in management's actions. (IF at 82-83).

C. *Hostile Work Environment*

Complainant failed to demonstrate that the alleged examples of unwelcome conduct constituted unlawful harassment.

With respect to the disparate treatment allegations above, S1 proffered legitimate, nondiscriminatory reasons for his actions, and Complainant did not show pretext.

Complainant also identified some incidents related to the disparate treatment allegations that he characterized as harassing.
With respect to Complainant's assertion that on June 26, 2017, S1 and D1's decision to reassign him under their direct supervision, "in a fictitious position" as an Integration Officer, was punitive. This Office notes that Complainant acknowledged the reason Complainant was reassigned from his position as an Ohio Site Specialist was a direct result of a "minor

7

disagreement" with his former Ohio Emergency Management Agency official that resulted in Complainant being issued a Letter of Reprimand (LOR). (IF at 72-73).

Complainant further asserted that following S1's issuance of his proposed suspension, S1 conducted "multiple clandestine trips to FEMA HQ" and conducted "spear-phishing attacks" against him. (IF at 81). S1 denied any knowledge of or participation in any of Complainant's assertions. (IF at 94-95).

Lastly, Complainant asserted that he was subjected to harassment based on his national origin, when on November 21, 2018, he was forbidden to wear Warbird polo shirts with WWII German aircraft because a coworker complained about the aircraft's "historical markings." (IF at 86). The Supervisory Emergency Management Specialist (EMS) (male, YOB: 1970, no prior EEO activity, White) explained that on November 14, 2018, an employee anonymously notified him that Complainant was wearing a shirt that depicted a swastika on the tail of German aircraft, which he also later observed. He stated that on November 15, 2018, after observing Complainant wearing another shirt depicting the same German aircraft, he discussed the shirt and the employee's concern with Complainant before providing S1 notification of the situation via email. (IF at 112). (SUPP-IF at 76-77, 79).

S1 stated that upon receipt of the EMS's email, he scheduled a meeting to discuss the issue; however, in the interim, Complainant provided him a package of materials related to his German heritage and allegation stating that he has been "harassed at FEMA for the home of his father's birth," which he did not review until after the November 21, 2018 meeting. During the meeting with Complainant and a union representative on November 21, 2018, S1 recalled that he advised Complainant that "wearing a swastika at work was creating a hostile work environment" and further advised Complainant that he would not be able to wear it at work. He further recalled telling Complainant he would review his previously submitted package, but his concern at the moment was the swastika, not the other German military insignia, because the swastika is a "significant and notorious symbol of hate," to which Complainant replied, "for people who hate Germans." (SUPP-IF at 69-70).

Although Complainant denied wearing a swastika to the office as alleged, and contended that he and "every male Caucasian" were subject to "demonization" at FEMA, he submitted no evidence to support his statements. Moreover, Complainant acknowledged owning and wearing six versions of polo shirts that depicted a 1942 Focke-Wulf 190A5 fighter plane with a "NSDAP Hakenkreuz" (Swastika) symbol on the tail. (SUPP-IF at 55, 57, 62). The symbol in question is a violation of FEMA's *Dress Code* (Sep. 3, 2010), which lists "potentially offensive language or slogans on any piece of attire or conspicuous part of the body" as an, "Unacceptable item." (SUPP-IF at 82).

Based on the record, Complainant failed to produce preponderant evidence that the incidents alleged were motivated by his membership in any protected classes.

8

## CONCLUSION

Based upon the full evidentiary record, CRCL concludes Complainant failed to prove that FEMA discriminated against Complainant. Since Complainant is not the prevailing party, he is not entitled to payment of attorney's fees, costs, or compensatory damages, and no corrective action is required.

_____         _____April 13, 2021_____
For Veronica Venture                                                                      Date
Deputy Officer, Office for Civil Rights and Civil Liberties
Director for EEO & Diversity
Department of Homeland Security

dCH

# NOTICE OF APPEAL RIGHTS

You have the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court.

All time periods are given in calendar days. If a time period expires on a Saturday, Sunday or Federal holiday, you may file on the next business day. If an attorney represents you, the time periods begin to run from the date that your attorney receives this decision.

## FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to EEOC within 30 days of the day you receive this final decision. You have the right to submit an optional brief or statement within 30 days of the date you file the appeal. File your appeal, and any subsequent supporting statement or brief, by accessing EEOC's public portal, at www.publicportal.eeoc.gov. When you file your appeal through the EEOC's public portal, please be sure to select the appropriate DHS Component.

If you are unable to access the public portal, you may send the appeal by mail addressed to:

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Or by personal delivery to:

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**
**131 M Street, NE**
**Suite 5SW12G**
**Washington, DC 20507**

Or by facsimile to (202) 663-7022.

At the same time you file an appeal with EEOC, you must also send a copy of your appeal, and any supporting statement or brief, to:

**Director, Office of Equal Rights**
**Federal Emergency Management Agency**
**500 C Street SW – Fourth Floor – 4SW-0915**
**Washington, DC 20472-3505**

And to:

**Office for Civil Rights and Civil Liberties**

**Department of Homeland Security**
**MS 0191**
**2707 Martin Luther King Jr Ave SE**
**Washington, DC 20528-0191**

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Director, Office of Equal Rights, Federal Emergency Management Agency. You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal. EEOC will dismiss your appeal if you do not file it within the time limits.

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal. You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, the time limits noted above may not be applicable to you, especially if you are filing this civil action after giving EEOC not less than 30 days' notice of your intent to file such an action. Accordingly, you should consult an attorney if you desire further guidance regarding the timeliness of your case.

You must also comply with the following instructions:

(1) You must name Alejandro N. Mayorkas, Secretary, Department of Homeland Security, as the defendant. Failure to provide his name and official title may result in dismissal of your case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC final decision.

**Please note that due to the current pandemic and national health emergency, some District Courts may have changed their procedures for how to file a civil action. Please look at the specific instructions provided by the District Court in the jurisdiction in which you live for how to file a civil action.**

# NOTICE OF APPEAL/PETITION
# TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____Yes; Date Received _____ (Remember to attach a copy)<br>____No<br>____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ____No<br>____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____No<br>____Yes (Attach a copy of the civil action filed) |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

EEOC FORM 573 REV 1/01

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597.
Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001

2. **AUTHORITY**: 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing on the date indicated below if sent via email or within five (5) calendar days after the date indicated below if sent by regular or certified mail. I certify that the foregoing final action, appeal rights, and appeal form were provided to the following:

Karl Rabenhorst
4611 122 St.
Pleasant Prairie, WI 53158
*(Via Email: karl.rabenhorst@fema.dhs.gov)*

Director, Office of Equal Rights
Federal Emergency Management Agency
395 E Street, SW, 2nd Floor
Washington, DC 20472-3220
*(Uploaded and Notified Via Email)*


*Mechelle White*  |  04/21/2021
CRCL EEO Specialist  |  Date