UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARL RABENHORST,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO MAYORKAS, Secretary,<br>United States Department of<br>Homeland Security,<br><br>　　　　Defendant. | No. 21 CV 3620<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Karl Rabenhorst worked for the Federal Emergency Management Agency for approximately 14 years as a technical hazard specialist. During his time there, Rabenhorst's employer reprimanded or disciplined him repeatedly. Believing that he was treated differently than his younger, women colleagues, Rabenhorst filed an EEO complaint with FEMA alleging sex and age discrimination and retaliation. After FEMA found no evidence of discrimination or retaliation, Rabenhorst brought this case alleging the same. Defendant moves for summary judgment.

**I.　Legal Standard**

Summary judgment is warranted if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "'Material facts' are facts that 'might affect the outcome of the suit,' and a dispute as to those facts is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hunter v. Museke*, 73 F.4th 561, 565 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court

need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The non-moving party is given "the benefit of conflicting evidence and any favorable inferences that might be reasonably drawn from the evidence." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022).

## II.   Local Rule 56.1 and Evidentiary Issues

The evidence submitted through Local Rule 56.1 statements of fact must be admissible at trial, except that affidavits or depositions may be accepted in lieu of live testimony. *See* Fed. R. Civ. P. 56(c); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Testimony presented through affidavits or depositions must be admissible, and admissibility usually requires the declarant or affiant's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. "Inasmuch as summary judgment procedure lacks the safeguard of cross-examination of an affiant, it is important that it be shown that he is competent to testify to the matters therein stated and that the facts to which he swears are admissible under the rules of evidence." *Am. Securit Co. v. Hamilton Glass Co.*, 254 F.2d 889, 893 (7th Cir. 1958).

Rabenhorst submitted a declaration in support of his Local Rule 56.1 statement of additional facts. [46-22].[1] Portions of the declaration assert facts without a proper foundation or basis to determine whether Rabenhorst has personal knowledge of the facts. For example, Rabenhorst asserts that in 2012, FEMA leadership relaxed evaluation criteria enforcement. [46-22] ¶ 6. But he provides no

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1.

2

foundation for how he knows that fact. Without knowing the source of his knowledge, it is impossible to know whether the testimony is admissible. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) (rejecting facts asserted in affidavit when the affidavit did not provide foundation for affiant's personal knowledge of those facts). For that reason, portions of ¶¶ 6, 8–13, 23–27, 29, and 32 of Rabenhorst's statement of additional facts are struck.

### III. Facts

Karl Rabenhorst is a white man over 40 years of age who was employed by the Federal Emergency Management Agency of the defendant United States Department of Homeland Security. [44] ¶ 1.[2] He began his employment as a technical hazard specialist in September 2009; before then, Rabenhorst had been in the Navy for 28 years. *Id.* At FEMA, Rabenhorst was originally assigned to work with state officials

---

[2] The facts are largely taken from Rabenhorst's response to defendant's Local Rule 56.1 statement, [44], and defendant's response to Rabenhorst's 56.1 statement of additional facts, [50], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard all immaterial facts. I ignore additional facts included in responses that do not controvert the asserted fact. *See* [44] ¶¶ 1–5, 7, 9–11, 15, 18, 23, 26–31, 35–36, 38–39, 42, 44, 46; [50] ¶¶ 4, 12, 21, 24, 33, 35. I also ignore all facts included in statements or responses that are not supported by the parties' cited evidence. N.D. Ill. Local R. 56.1(d)(2), (e)(3); *see* [50] ¶¶ 12, 13, 21, 24–26, 33. Defendant's objection to Rabenhorst's inclusion of a newspaper article as inadmissible hearsay is sustained. [50] ¶ 20. While newspaper articles are self-authenticating, Fed. R. Evid. 902(6), they are inadmissible hearsay when they are offered for the truth of the matters asserted therein, *see* Fed. R. Evid. 801(c); *Chi. Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001). Rabenhorst makes no argument that he is offering the article for any other purpose. Where the parties dispute facts and both rely on admissible evidence, I set forth both sides' facts.

3

in Wisconsin, Michigan, and Ohio to develop and review plans for emergency preparedness. [44] ¶ 2.

In May 2014, Sean O'Leary was reassigned to be the Tech Hazards Branch Chief. [50] ¶ 7. Rabenhorst asserts that O'Leary began waiving evaluation criteria, and that Rabenhorst repeatedly counseled O'Leary regarding regulatory requirements and violations. [50] ¶¶ 4, 8. In response, Rabenhorst asserts he was reprimanded for alleged interference and insubordination. *Id.* In March 2016, Rabenhorst filed a whistleblower complaint with the DHS Office of the Inspector General, [50] ¶ 12, and multiple union grievances, [44] ¶ 23.

Rabenhorst was twice reprimanded for inappropriate interactions with state officials. In April 2016, Rabenhorst was officially reprimanded by a FEMA supervisor for failing to follow the supervisory chain of command when he emailed the Michigan state attorney general to argue about the interpretation of a Michigan state law without FEMA authorization. [44] ¶ 3. The reprimand noted two previous exceedingly aggressive or argumentative email exchanges for which Rabenhorst had been verbally counseled and warned the year before. *Id.* The reprimand also warned that future acts of misconduct could result in further discipline up to and including Rabenhorst's removal from federal service. *Id.*

In June 2017, Rabenhorst was again officially reprimanded by another FEMA supervisor for inappropriate behavior during meetings with Ohio state officials, including asking whether they spoke English and cursing. [44] ¶ 4. As a result, Ohio state officials asked FEMA to stop assigning Rabenhorst to Ohio events. *Id.* The

4

reprimand again warned that future acts of misconduct could result in further discipline. *Id.*

O'Leary, a man over the age of 40, became Rabenhorst's direct supervisor in July 2017, when Rabenhorst was assigned to part of FEMA that did not work directly with state officials. [44] ¶ 5.

During an August 2017 exercise, Rabenhorst spoke with a contractor assigned to evaluate the exercise, criticizing O'Leary's planning and stating, "O'Leary had his head up his ass." [44] ¶ 44. O'Leary emailed Rabenhorst telling him to not interfere or speak with contractors and that Rabenhorst should direct any complaints about the exercise through FEMA's chain of command. [44] ¶ 7. Yet, the following day, Rabenhorst spoke with another contract evaluator about his concerns with the exercise.[3] [31-2] at 62; [32-2] at 14.

O'Leary was preparing to discipline Rabenhorst for insubordination and interfering with contractors when Rabenhorst was deployed to Puerto Rico for disaster relief after a hurricane in October 2017. [44] ¶ 9–10. Josephine Arcurio, a woman over 40 years of age, served as the FEMA management official responsible for all personnel assigned to the Puerto Rico relief effort, including Rabenhorst. [44] ¶ 11.

Less than one month later, Arcurio released Rabenhorst from his deployment, "with cause, as a result of conduct and behavior issues with colleagues and

---

[3] Rabenhorst objects to defendant's statements of fact, [44] ¶¶ 6, 8, which state FEMA supervisors and the second contractor told O'Leary of Rabenhorst's criticism and interactions with the contractors, as inadmissible hearsay. While what Rabenhorst told the contractors isn't hearsay because Rabenhorst is a party-opponent, s*ee* Fed. R. Evid. 801(2)(A), the statements of supervisors and the contractor to O'Leary about what Rabenhorst said are hearsay. Rabenhorst's objections are sustained.

5

supervisors," including using profanity during staff meetings, treating women employees and supervisors disrespectfully, and telling his women supervisors that they were "sorority girls with ADHD and that he had spanked girls bigger than them." [44] ¶ 12.

From October to December 2017, Rabenhorst contacted the Office of Equal Rights, went through the EEO counseling process, and filed a complaint of employment discrimination, in which he accused management of discrimination based on his age and sex. [32-1] at 25–32; [32-2] at 20, 41, 71–72. Rabenhorst never heard back regarding the complaint. [32-1] at 32. O'Leary testified that he was unaware of Rabenhorst's 2017 EEO activity, [44] ¶ 29, though Rabenhorst testified that he told O'Leary that he intended to file a grievance upon his return from Puerto Rico, [32-1] at 66–67.

In November 2017, O'Leary received more details from Arcurio and decided to discipline Rabenhorst for his conduct in Puerto Rico. [32-1] at 161. In June 2018, O'Leary sent Rabenhorst a notice of proposed suspension for a period of fourteen days, based on allegations that Rabenhorst exhibited conduct unbecoming a federal employee, failed to follow instructions during FEMA's August 2017 exercise, and behaved disruptively during his deployment to Puerto Rico. [44] ¶ 15. Rabenhorst submitted a 200-page-plus written response to the notice. [44] ¶ 17. Rabenhorst and O'Leary set up multiple meetings to discuss the proposed suspension that had to be rescheduled. [44] ¶¶ 30–31; [50] ¶¶ 33, 35. After considering the record, O'Leary

6

issued a decision suspending Rabenhorst without pay for 13 days on October 1, 2018. [44] ¶ 18.

In August 2018, O'Leary cancelled Rabenhorst's participation in two FEMA exercises. [44] ¶ 40. That same month, Rabenhorst filed a second complaint of sex and age discrimination, and retaliation for his prior EEO complaint with FEMA. [44] ¶ 21. FEMA issued its final agency decision on Rabenhorst's discrimination claims in April 2021. [44] ¶ 37. Rabenhorst subsequently brought this case. [1].

## IV. Analysis

### A. No Prima Facie Case of Sex or Age Discrimination

To determine whether an employer discriminated against its employee because the employee belonged to a protected class, a court should ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's ... sex ... or other proscribed factor caused the .... adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The parties used the *McDonnell Douglas* burden-shifting framework in their briefs. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021). Under that framework, a plaintiff makes a *prima facie* case of discrimination when he shows, "(1) []he is a member of a protected class, (2) []he was meeting the defendant's legitimate expectations, (3) []he suffered an adverse employment action, and (4) similarly situated employees who were not members of h[is] protected class were treated more favorably." *Id*. (citations omitted); *see also Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002) (setting forth the same prima facie case for age discrimination under the ADEA). Once a plaintiff makes a *prima facie* case,

7

the burden shifts to the defendant to give a "legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Khungar*, 985 F.3d at 573 (citations omitted); *Franzoni*, 300 F.3d at 772.

Rabenhorst argues that he was discriminated against based on his sex and age when, "because of his refusal to follow orders that were either wrong or illegal, management showed favoritism to younger females, who had poor judgment and because of this [Rabenhorst] received a suspension and demotion from his position due to his attempts to correct and follow the law and FEMA procedures." [47] at 12.

The parties do not dispute the first element of the prima facie test. But Rabenhorst fails the second element because there is no evidence that he performed his job according to his employer's legitimate expectations. Although Rabenhorst had good performance evaluations for his work,[4] he was repeatedly insubordinate and abusive to his superiors and coworkers. [44] ¶¶ 3–4, 12, 44; [31-2] at 62; [32-2] at 14. Rabenhorst argues that there is no evidence that FEMA management communicated to him that their expectations weren't being met. [47] at 12. But Rabenhorst was disciplined for such misconduct, ranging from oral warnings and written reprimands. [44] ¶¶ 3–4, 7, 12. Considering his conduct, Rabenhorst was not performing his job according to his employer's legitimate expectations. *See Williams v. Airborne Exp., Inc.*, 521 F.3d 765, 768 (7th Cir. 2008) (holding an employee did not show he was

---

[4] O'Leary explained that while Rabenhorst performed his work well, his conduct "cause[d] a repeated problem" and that's why O'Leary responded "with a disciplinary action instead of a performance based action." [50] ¶ 39 (citing [32-1] at 185–86).

8

meeting employer's legitimate job expectations because he was repeatedly insubordinate after being disciplined.).

Rabenhorst has shown he faced adverse actions: the 13-day suspension and his removal from the Puerto Rico deployment. [44] ¶¶ 12, 18. The notice of proposed suspension and delay in resolving the allegations of misconduct do not constitute materially adverse actions. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1121 (7th Cir. 2009) ("Uncertainty as to whether the suspension will be upheld is not equivalent to actually serving the suspension because the plaintiff does not have to endure the same economic harm."). But Rabenhorst was ultimately suspended without pay for 13-days, which does constitute an adverse action. *See Lesiv v. Ill. Cent. R.R. Comp.*, 39 F.4th 903, 914 n. 6 (7th Cir. 2022). Rabenhorst also argues that he was demoted to a clerk position when in Puerto Rico, *see* [50] ¶ 25, but he presents no competent evidence to support this allegation. Rabenhorst's removal from the Puerto Rico relief mission does constitute an adverse action as it affected his work hours, compensation, and career prospects. *See* [32-1] at 30, 42 (Rabenhorst lost overtime opportunities, the opportunity to get FEMA qualifications through deployment, and was permanently barred from ever deploying to another emergency); *Malekpour v. Chao*, 682 F. App'x 471, 474 (7th Cir. 2017) ("Job reassignments are sometimes significant enough to be actionable, but only if they affect the employee's work hours, compensation, or career prospects." (quotation omitted)).

Rabenhorst fails to establish the fourth element of the prima facie case—that similarly situated employees outside of his protected classes were treated preferably.

9

Rabenhorst argues that his younger women colleagues in Puerto Rico were treated more favorably than he was, specifically that "younger females that didn't understand the FEMA rules and procedure" were not disciplined, while "Rabenhorst an older male was subjected to unfair treatment due to his attempt to assist younger female employees." [47] at 13.

But these colleagues were not similarly situated to Rabenhorst. To be comparable, the employees must have "engaged in similar misconduct … of comparable seriousness." *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) (quotation omitted). Rabenhorst was not disciplined because he did not understand FEMA rules and procedures,[5] but for his failure to follow instruction, disruptive and inappropriate behavior, and conduct unbecoming a federal employee. [44] ¶ 18 (citing [32-2] at 441–42). There is no evidence that his younger women colleagues in Puerto Rico engaged in similar misconduct. Nor is there any evidence that Rabenhorst's other colleagues are comparable. O'Leary testified that he never had any other employee commit the type of misconduct as Rabenhorst. [44] ¶ 46.

Even if Rabenhorst could establish a prima facie case, Rabenhorst presents no evidence that O'Leary's decision to suspend Rabenhorst without pay for 13 days was motivated by discriminatory animus, or that the reasons for the suspension were pretextual. *See Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 747 (7th Cir. 2021).

---

[5] Even if Rabenhorst were disciplined for "providing support to unqualified females and … substantially younger workers," *see* [47] at 10, Rabenhorst presents no evidence of an employee outside of his protected classes that was treated differently for comparable conduct.

### B. No Hostile Environment

Discrimination can also take the form of a hostile work environment "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1115 (7th Cir. 2022) (internal quotation omitted). The elements of such a claim are: "(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Id.* at 1115–16. To determine whether conduct is severe or pervasive, courts consider the totality of circumstances, including the frequency of discriminatory conduct, how offensive a reasonable person would determine the conduct to be, whether it is physically threatening or causes humiliation as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it is directed at the plaintiff. *Id.* at 1116.

Rabenhorst has not marshaled evidence of an objectively offensive work environment, let alone one that was severe or pervasive. Rabenhorst argues that Arcurio created a hostile work environment when she removed him from the Puerto Rico mission, when he was disciplined for "providing support of unqualified females and much substantially younger workers," when these workers "rebuffed any suggestion from Rabenhorst or any other man, as an affront to their authority and experience," and when these coworkers were not similarly disciplined. [47] at 15.

11

None of this, considered together, constitutes the kind of harassment or humiliation that is necessary to prove a hostile work environment. *See Scaife*, 49 F.4th at 1114–15, 1117–18 (holding conduct was not severe or pervasive when supervisor demeaned employee during conversations, accused her of performing her job illegally, threatened her job, and yelled at her multiple times in an aggressive manner); *Brooks v. Avancez*, 39 F.4th 424, 441–42 (7th Cir. 2022) (finding no hostile environment despite coworkers swearing at plaintiff, refusing to follow plaintiff's directions, and using disrespectful language to plaintiff); *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 715–16 (7th Cir. 2021) (holding that denying specialized training, rejecting request for vacation time, hiring other colleagues to full-time positions before plaintiff, and offensive comments did not constitute a hostile work environment). Indeed, although Rabenhorst is entitled to all reasonable inferences in his favor, the evidence suggests Rabenhorst harassed other employees based on their gender and age. *See, e.g.*, [44] ¶ 12.

Ultimately, Rabenhorst has not provided evidence that the above conduct occurred because of his sex or age. Rabenhorst argues that younger women employees were treated more favorably, [47] at 13, but Rabenhorst fails to provide any competent evidence of this differential treatment or that it was offensive or pervasive conduct. Throughout the record, Rabenhorst asserts that Arcurio and other women colleagues were sexist against men. *See, e.g.*, [32-2] at 9 (calling Arcurio a "known man-hater throughout FEMA"); [47] at 7 (alleging Arcurio intended "to intimate and cower every man in sight"); [32-2] at 214 (accusing a woman coworker of orchestrating

12

a "gender-biased Coup."). But Rabenhorst's own subjective belief, without more, is insufficient to show that Arcurio or other coworkers harbored any prejudice against men. *See Brooks*, 39 F.4th at 436–37 ("Guessing at an employer's hidden animus or inner prejudice, however, is not enough to defeat summary judgment. The employee must support h[is] hunch with evidence."). Rabenhorst makes no accusations, and presents no evidence, that O'Leary was prejudiced against men or older individuals.

The record does not contain evidence to support Rabenhorst's claim of a hostile work environment based on his sex or age.

### C.     No Prima Facie Case of Retaliation

Title VII[6] protects an employee who has acted to oppose an unlawful employment practice from retaliation by his employer. *Lewis v. City of Chicago*, 496 F.3d 645, 654–55 (7th Cir. 2007). To survive summary judgment, Rabenhorst has to "offer evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

"Protected activity is some step in opposition to a form of discrimination that the statute prohibits." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (internal quotations omitted). Rabenhorst argues that he engaged in protected activity on multiple occasions when he filed a whistleblower complaint in 2016 and when he formally grieved prior reprimands. [47] at 14. But there is no evidence that the whistleblower complaint or grievances were related to an unlawful

---

[6] Rabenhorst brought his retaliation claim under Title VII only, and not the ADEA. [1] ¶ 25.

13

employment practice that is prohibited by Title VII. Rabenhorst's whistleblower complaint reported alleged regulatory violations, and his grievances challenged reprimands for inappropriate communications with state officials. [44] ¶ 23; [50] ¶ 12. Therefore, they are not protected activities. Rabenhorst did engage in a protected activity in October to December 2017, when he filed a complaint of employment discrimination based on sex and age discrimination regarding his discharge from the Puerto Rico response. [32-1] at 25–32; [32-2] at 20, 41, 71–72.

An adverse action for purposes of a retaliation claim is anything that would dissuade an employee from "engaging in the protected activity … judged from the perspective of a reasonable person in the plaintiff's position." *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 275 (7th Cir. 2023) (internal quotations omitted). Suspension without pay does constitute an adverse action for Title VII retaliation claims. *See* [44] ¶ 18; *Lesiv*, 39 F.4th at 913–14.

Nonetheless, Rabenhorst has failed to show there is a causal connection between the suspension and his statutorily protected activity sufficient to defeat summary judgment. "In a federal-sector retaliation case, the plaintiff's evidence— whether direct, circumstantial, or both—must permit the factfinder to conclude the employer's retaliatory animus played a part in an adverse employment action." *Huff v. Buttigieg*, 42 F.4th 638, 647 (7th Cir. 2022), *reh'g denied*, No. 21-1257, 2022 WL 16640618 (7th Cir. Nov. 2, 2022). To obtain backpay and compensatory damages, which Rabenhorst seeks, he must show that but for the retaliation, his suspension would not have occurred. *See id.* at 646; [1] at 6. When determining causation, courts

consider direct and circumstantial evidence together, not separately. *Huff*, 42 F.4th at 646–47 (citing *Ortiz*, 834 F.3d at 760). "Common categories of circumstantial evidence include suspicious timing, ambiguous statements, pretext, and evidence of similarly situated employees who were treated differently." *Id.* at 647 (citing *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)).

There is some evidence of suspicious timing between Rabenhorst's 2018 suspension and his 2017 EEO complaint. Even though the letter of proposed suspension was issued in June 2018, there is evidence that O'Leary decided to discipline Rabenhorst for his conduct in Puerto Rico in November 2017. [32-1] at 161. At the same time, there is evidence that O'Leary had intended to discipline Rabenhorst for insubordination and interference with contractors before Rabenhorst even went to Puerto Rico. [44] ¶ 9. "When there are reasonable, non-suspicious explanations for the timing of the defendant's conduct, proximity in time is not enough to support a retaliation claim." *Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) (internal quotation omitted). Here, there is a reasonable explanation for the timing of O'Leary's decision: he was already on the path to disciplining Rabenhorst and then received the details surrounding Rabenhorst's removal from Puerto Rico from Arcurio in November 2017. So, timing alone is not enough.

Rabenhorst argues that "it was Arcurio, who was apparently the decision maker regarding the retaliatory actions against Rabenhorst and was aware of all of Rabenhorst's protected activity shortly after he engaged in it." [47] at 15. But

Rabenhorst presents no evidence that Arcurio was involved in the suspension or that she was aware of the 2017 EEO complaint. Rabenhorst also fails to offer any evidence of ambiguous statements of animus or similarly situated employees who were treated differently. Rabenhorst has not presented any evidence that O'Leary's reasons for the suspension were pretextual. There is no evidence that would allow a jury to find that O'Leary's decision to suspend Rabenhorst without pay for 13 days was motivated by anything but Rabenhorst's misconduct.

## V. Conclusion

Defendant's motion for summary judgment, [30], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: January 22, 2024